## JONES *vs.* BRYANT.

If a conveyance of land be fraudulent as to creditors, the title passes to the grantee until some creditor defeats it by the levy of an execution; and when defeated, it is not rendered void *ab initio*, but only from the time when the creditor levied.

If the grantee enter into possession, and cultivate the land upon his own account, the creditors of the grantor cannot attach the annual crops. They can only attach and levy upon what their debtor owned, and fraudulently conveyed.

TROVER, for seven tons of hay, alleged to have been taken and converted by the defendant on the 5th of October, 1839.

The defendant was a deputy sheriff, and justified the taking of the hay, upon an execution recovered May term, 1839, in favor of Jonathan Bliss against one Joseph Jones, upon a promissory note dated December 13th, 1836.

The only question in controversy was respecting the ownership of the property.

It appeared that the farm on which the hay was cut formerly belonged to Joseph Jones. On the first day of October, 1825, being indebted to Benjamin Merrill, Jones gave him a deed of warranty of the farm, for the debt, and Merrill agreed to re-convey, on payment of the debt and interest.

On the 28th of September, 1827, by an arrangement between Jones, Merrill and John Page, Merrill conveyed the premises to Page, by a quitclaim deed, and Page, for the conveyance, paid Jones' debt to Merrill, and certain other of his debts. Jones was owing Page at the time, and Page gave him a writing, that on payment of his debt, and of the sums paid out by him, within one year, with interest, he would convey the premises to Jones.

This contract was renewed from year to year, for a series of years. Afterwards Page leased the premises to Jones for one year.

On the 29th of September, 1837, Horace Jones, the plaintiff, and George Jones, who are sons of Joseph, made an arrangement with their father, and with Page, by which Page agreed to convey the premises to George and Horace, on

payment by them of the debts then due on the place, within one year, and on their entering into a contract to support their father and mother during their natural lives.

The obligation, which was executed by Horace and George, set forth, that for the love and affection they bore to their parents, Joseph and Hannah, and also in consideration of the right to purchase of John Page certain real estate, including the homestead of their said parents, they agreed to maintain and provide for them, &c., "they, said Joseph and Hannah, continuing their usual industry at all times when their health will permit the same, and when thereto requested their labor shall be for the benefit of said George and Horace."

The writing by which Page agreed to convey to Joseph Jones had expired before December, 1836, when the note was executed.

Afterwards, George Jones gave up his interest in the premises to the plaintiff Horace, and Page gave a writing to him, by which he agreed that if Horace paid to him, on or before the 31st of December, 1838, the sum of $530.98, being the amount then due on the place, and should also pay the taxes on the farm for that year, he would quitclaim the premises to Horace.

This contract was extended from year to year, the last contract bearing date the 19th of March, 1841, and extending the time to the 19th of March, 1842, at the expiration of which time the amount due on the place was $470.25.

It appeared that the farm was worth about $1000.

Joseph Jones continued to reside on the farm, and had done much of the labor thereon.

The court ruled that the facts disclosed such an interest in Joseph Jones that the conveyance or relinquishment of his right in the premises, in consideration of the contract for the maintenance of himself and wife during their natural lives, was fraudulent as regarded creditors, and as against the debt on which the hay was attached and sold. To which ruling the plaintiff excepted.

A verdict was rendered, by consent, for the plaintiff, subject to be set aside and judgment entered for the defendant.

*Goodall & Hibbard*, for the plaintiff. Subsequent creditors cannot object to a conveyance because it is without consideration, even if it be a family arrangement.

The conveyance to Merrill was on a sufficient consideration; and it does not appear that Joseph Jones owed any debts, except the one for which he conveyed. This debt, upon which the defendant made the attachment, was contracted eleven years after the farm had been conveyed to Merrill.

Actual fraud must be shown in the case of a subsequent creditor. 4 *Wash. C. C. Rep.* 137 ; 8 *Wheat.* 229, *Sexton* vs. *Wheaton;* 11 *Wheat.* 199, *Hinde's Lessee* vs. *Longworth;* 1 *Peters* 464, *Bank of Columbia* vs. *Hagner;* 3 *Johns. Ch. Rep.* 500, *Reade* vs. *Livingston;* 4 *Greenl.* 195, *Howe* vs. *Ward;* 14 *Maine Rep.* 370, *Blaisdell* vs. *Cowell;* 2 *Pick.* 411, *Damon* vs. *Bryant;* 3 *Wend.* 411, *Wadsworth* vs. *Havens;* 8 *N. H. Rep.* 44, *Carlisle* vs. *Rich;* 11 *Mass.* 422, *Bennett* vs. *Bedford Bank;* 8 *Peters* 244, *Gregg* vs. *Lessee of Sayre & Wife.*

There is nothing from which the court can find conclusive evidence of fraud. 8 *N. H. Rep.* 288, *Paul* vs. *Crooker;* 7 *Wend.* 263, *Every* vs. *Edgerton;* 6 *N. H. Rep.* 67, *Smith* vs. *Lowell;* 4 *Greenl.* 400, *Reed* vs. *Woodman;* 8 *Cow. R.* 286, *Benton* vs. *Jones.*

A voluntary deed, without actual fraud, by one not indebted at the time, is valid as against subsequent creditors. 5 *Greenl.* 471, *Usher* vs. *Hazeltine.* In *Smith* vs. *Lowell,* and *Paul* vs. *Crooker,* there was insolvency.

Joseph Jones' interest in the farm had expired in December, 1836. If he had any interest before, he had none after that time. Page might do as he pleased with his own.

*Jos. Bell*, for the defendant. Page admitted, on the stand, that he held the farm as security.

Insolvency could have been shown, if necessary ; but the court ruled on the ground that a party could not provide for his own sustenance, to the prejudice of his creditors.

The question is open here, how far the conveyance could be sustained against a subsequent creditor. Joseph Jones had an interest in the property within a short time prior to December, 1836. Could he put that interest out of his hands, to secure his own maintenance, and to the injury of a subsequent creditor ?

PARKER, C. J.* It is immaterial, in this case, whether the conveyance from Joseph Jones was, or was not fraudulent, as to creditors. The deed from him to Merrill was absolute, and valid as between the parties ; and although Merrill received the deed as a security, and agreed to re-convey on the payment of his debt, it does not appear that Jones had any defeasance, so that he could regain the title. If he had, the deed gave Merrill a right of entry, and possession, until the condition should be performed.

When Page took the title from Merrill, he took the conveyance as a security for what he paid, and the debt due to himself ; but he had the right, as against Joseph Jones, to enter and take the profits ; and this right would exist as against the creditors of Joseph Jones, until they, by an assertion of their rights, in due course of law, should defeat his title. If the conveyance from Jones were fraudulent, the creditors had no right of entry, but only a right to levy upon the land and defeat it. If any of them had seen fit to attach the land, and by a judgment, and the levy of an execution, had obtained a good title, because the conveyance from Jones was fraudulent as to creditors ; the title thus obtained would not have related back beyond the levy of the execution, except as a security against conveyances by the debtor, or against other attachments or levies ; and, of course, the creditor so levying would have had no claim to the profits anterior to that time. His attachment would only have

* WOODS, J., having been of counsel, did not sit.

given him a lien upon the land, and a priority of right in levying upon it. He could not have asserted any right to the crops raised before the levy.

It is clear, then, that had Page taken the actual possession of the land, and cultivated it, he could not have been made liable for the mesne profits, nor could the creditors of Joseph Jones have taken the crops from him, however invalid his title might have been as against the creditors. They could not have attached the crops, as the property of Joseph Jones, because the conveyance was good against him until the condition should be performed, and good against every one else until defeated by due proceedings at law. And if defeated, it would not be rendered void *ab initio*, but only from the time of the levy of the execution. On the assumption that the conveyance was fraudulent, the right of the creditors was to take, not the crops, but the land which had been thus fraudulently conveyed. Until some of them saw fit to assert that right, the conveyance would stand good.

Page permitted Joseph Jones to occupy several years, and during that time the crops, for aught which appears, belonged to Joseph Jones, and might have been taken for his debts.

In September, 1837, an arrangement was made by which Page, with the assent of Joseph Jones, agreed to convey to the plaintiff and George Jones, upon the payment of the amount due him, and upon their entering into an agreement to maintain their parents.

George Jones subsequently released all his title to the plaintiff. The obligation which the plaintiff gave to support his parents cannot enlarge the rights of the creditors in this respect.

If, after this arrangement, the plaintiff occupied the farm, and cut the hay, in question in this case, it belonged to him, and he has the right to maintain the action.

But there is some evidence in the case, that Joseph Jones continued to reside on the farm, and has done much of the labor upon it. The terms upon which he lived and labored

there, do not seem to have been enquired into, nor do they appear, unless it be from the clause in the agreement for his support, by which, when requested, his labor was to be for the benefit of his children. If the plaintiff occupied the farm, and his father labored for him under that provision in the agreement, the hay cut upon the land did not belong to the father, and his creditors could not take it. But if he occupied the farm, as he appears to have done previously, cultivating it upon his own account, the attachment by the defendant may have been well made. And so if there were a colorable arrangement that the plaintiff should hold the possession, while it was in fact carried on for the account of the father.

The ruling of the court in relation to the title was erroneous, and may have prevented the defendant from going into an enquiry upon this subject; and if so, the verdict must be set aside, and the case sent to a

*New trial.*